**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **SHALINDA SHUNTA KENDRICKS,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **THE STATE OF TEXAS, JERRARD SMITH, AMY DYER, RONDA SWAIM, SANDRA DILLETT, MARISSA KLECKA, ASHLEY HANEY, and SAMANTHA MARX,** <br><br> **Defendants.** | § § § § § § § § § § § § | **CASE NO. 6:23-CV-783-ADA-DNM** |

**REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE REGARDING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [DKT. NO. 23]**

TO: THE HONORABLE ALAN D ALBRIGHT,
UNITED STATES DISTRICT JUDGE

The undersigned submits this Report and Recommendation to the District Judge pursuant to United States Code Title 28, Section 636(b)(1)(c), Federal Rule of Civil Procedure 72, and Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court is Defendants' Motion to Dismiss Plaintiff Shalinda Shunta Kendricks's First Amended Complaint. Dkt. No. 23. Having considered the Motion, Response, Reply, and relevant pleadings, the Court **RECOMMENDS** that the District Judge **GRANT** the Motion for the reasons stated below.

## I. BACKGROUND

**Procedural History.** Kendricks first sued the State of Texas and several individual defendants in 2024. Dkt. No. 1. Defendants moved to dismiss her Original Complaint shortly after. Rather than responding to Defendants' motion, Kendricks filed her First Amended Complaint, which incorporates her original complaint by reference. Dkt. No. 12 at 1. Thus, the

Court considers the allegations contained in both filings in reviewing Defendants' Motion to Dismiss the First Amended Complaint. *See Castille v. Port Arthur ISD*, 168 F.4th 240, 256 (5th Cir. 2026) (quoting *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)).

**Factual Background.** From September 28, 2021, to May 20, 2022, Kendricks, an African-American woman, worked as a Texas Works Advisor for the Texas Department of Health and Human Services (TDHHS). Dkt. No. 1-3 ¶ 1. Beginning in February 2022, a white co-worker would enter Kendricks's workspace and allegedly insult Kendricks using racial slurs when Kendricks refused to do things for her. *Id.* ¶¶ 3–4. From then until the end of Kendricks's employment on May 20, 2022, Kendricks reported the alleged harassment to various supervisors and more senior personnel within TDHHS. *Id.* ¶¶ 7, 11, 17, 24. Tensions between Kendricks and her coworkers continued to rise, to the point that Kendricks requested to work from home. *Id.* ¶ 23.

Eventually, Sandra Dillett, an African-American employee in TDHHS's HR department, terminated Kendricks's employment. *Id.* ¶ 29. Kendricks's termination followed an allegation that she recorded another female employee while the two of them were in the bathroom, as well as for being a "disruption in the office" and "creating an environment where staff felt unsafe." *Id.* ¶¶ 30–34. Now, Kendricks is suing the State and the individual TDHHS employees she believes were involved in the events leading to her termination, alleging that the reason for her termination is unfounded and that she was treated differently from other similarly-situated employees of a different race because their complaints were investigated and hers were not. *Id.* ¶¶ 29, 32, 40–47.

## II. APPLICABLE LAW

Defendants move to dismiss Kendricks's Complaint for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) for failure to state a claim on which relief can be granted. Dkt. No. 23.

**A. Rule 12(b)(1)**

A federal court must ensure it has subject matter jurisdiction over any case. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Because federal court jurisdiction is limited, a federal court must presume that a suit falls outside its jurisdiction any time questions about jurisdiction are raised. *Id.* Moreover, "federal courts must address jurisdictional questions whenever they are raised and must consider jurisdiction *sua sponte* if not raised by the parties." *Id.* at 919. Indeed, whether the Court has jurisdiction is a threshold inquiry that the Court must address before it can resolve any other matter in the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95 (1998). "When [jurisdiction] ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case." *Id.* at 94 (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

Federal courts may have subject-matter jurisdiction in two ways: federal question or diversity. 28 U.S.C. §§ 1331, 1332. Federal question jurisdiction exists when a case or controversy arises under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. The well-pleaded complaint rule governs the presence of federal question jurisdiction, holding that federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998); *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680 (5th Cir. 2001). A defense raising a federal question or based on federal law does not establish subject-matter jurisdiction. *See Vaden*

*v. Discovery Bank*, 556 U.S. 49, 60 (2009) ("[A] suit 'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]'. . . . Federal jurisdiction cannot be predicated on an actual or anticipated defense . . . . Nor can federal jurisdiction rest upon an actual or anticipated counterclaim.").

The Constitution and Congress define the limits of federal subject matter jurisdiction. *Royal Cain U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025). If neither the Constitution nor a federal statute confers jurisdiction for a particular kind of case, then the federal courts cannot hear that case. *See Weekly v. Marrow*, 204 F.3d 613, 615 (5th Cir. 2000). The sovereign-immunity doctrine exemplifies this concept. *Francise Tax Board of California v. Hyatt*, 587 U.S. 230, 237–44 (2019). Indeed, "'[a]n integral component' of the States' sovereignty [is] 'their immunity from private suits.'" *Id.* at 238 (quoting *Fed. Mar. Comm'n v. S.C. Ports Auth.*, 535 U.S. 743, 751–52 (2002)). The doctrine, as the Eleventh Amendment embodies, holds that "individuals may not sue a state—either in its own courts, courts of other states, or federal courts—without the state's consent." *Russell v. Jones*, 49 F.4th 507, 512 (5th Cir. 2022).

When sovereign immunity is in play, it "poses a total bar to 'suit,' not just to liability[,]" unless one of two conditions are met: (1) the state waives its immunity and consents to suit; or (2) Congress abrogates the immunity through the Fourteenth Amendment. *Id.* A state waives its sovereign immunity and consents to suit when, in the text of the relevant statute, the State unequivocally expresses its consent. *Sossamon v. Texas*, 563 U.S. 277, 284 (2011). "Waiver may not be implied." *Id.* If a state waives its sovereign immunity, courts strictly construe the scope of the waiver in favor of the state. *Id.* at 285. Courts thus apply a waiver only to the extent that the statutory text allows—if the statute does not expressly state that the waiver applies, it does not apply. *See id.* Congress abrogates immunity through the Fourteenth Amendment when, under a

valid exercise of constitutional authority, it "enact[s] 'unequivocal statutory language' abrogating the States' immunity from the suit." *Allen v. Cooper*, 589 U.S. 248, 255 (2020) (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 56 (1996)). If neither of those two conditions is met, a federal court lacks jurisdiction to hear the case. *Allen*, 589 U.S. at 254; *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675–76 (1999).

**B. Rule 12(b)(6)**

Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions[,] . . .a formulaic recitation of the elements of a cause of action . . . ," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citation modified).

In reviewing a Rule 12(b)(6) motion, a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted). Consequently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## III. ANALYSIS

Kendricks asserts eight claims against Defendants: "(1) 42 U.S.C. § 1983 and pursuant to general federal question statute; (2) Fourteenth Amendment to the United States Constitution; (3) Title VII of the Civil Rights Act of 1964 and amendments; (4) Whistleblower Protection Laws; (5) Intentional Infliction of Emotional Distress; (6) Negligent Infliction of Emotional Distress; (7) Defamation of Character; and (8) All other laws that [her] pleadings meet." Dkt. No. 12 at 4. She advances all eight claims against each defendant, including the individual defendants in their official and individual capacities. *Id.* at 2. Defendants move to dismiss Kendricks's complaint in its entirety because sovereign immunity bars all of Kendricks's claims against the State or the individual defendants in their official capacities, qualified immunity bars all claims against the individual defendants in their individual capacities, and, in the alternative, Kendricks failed to properly plead any of her claims. Dkt. No. 23.

As an initial note, the Court considers Kendricks's Fourteenth Amendment claim as brought under Section 1983 even though she lists them as separate causes of action because she describes them jointly in her Amended Complaint. Dkt. No. 12 at 3 ("I claim that the Defendants who I am suing under Section 1983 violated very clearly established federal law, and unconstitutionally deprived me of due process of law[.]"). The Court also considers Kendricks's cause of action under "Whistleblower Protection Laws" to mean a claim under Texas Government Code Chapter 554, specifically Section 554.002, because it is the only whistleblower protection law she discusses in her complaint. *See id.* at 2–3.

**A. Subject-matter jurisdiction.**

Because the issue of sovereign immunity implicates the Court's jurisdiction, the Court must address it first. *Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.)

506, 514 (1868)); *see Allen*, 589 U.S. at 254. Naturally, the Court must undertake a sovereign immunity analysis for all of Kendricks's claims against the State itself. The doctrine also applies, however, to Kendricks's official-capacity claims against the individual defendants because "a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. . . . As such, it is no different from a suit against the State itself." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). Thus, if sovereign immunity bars a claim against the State, it also bars the claim against a defendant in their official capacity.

As to Kendricks's Section 1983 claims, "neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983." *Id.* Section 1983 does not abrogate the State's sovereign immunity, nor did Congress intend it to do so. *Id.* at 66–70 ("Section 1983 . . . does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); *see also Hafer v. Melo*, 502 U.S. 21, 30 (1991) ("Congress did not intend to override state immunity when it enacted § 1983[.]"). As a result, the Court lacks jurisdiction to hear Kendricks's Section 1983 claims against the State and the individual defendants in their official capacities.

Next, the Court lacks jurisdiction to hear Kendricks's "Whistleblower Protections Laws" claims against the State and the individual defendants in their official capacities. Kendricks points to Texas Government Code Section 554.0035, which expressly waives the State's sovereign immunity when a public employee sues it under Chapter 554 for the relief Chapter 554 provides. Dkt. No. 12 at 2; TEX. GOV'T CODE § 554.0035. Under Chapter 554, a public employee must bring a whistleblower protection suit "in a district court of the county in which the cause of action arises or in a district court of Travis County" if the plaintiff is an employee of a state governmental entity, as Kendricks is here. TEX. GOV'T CODE § 554.007. Thus, Section

554.0035's waiver applies to Texas State district courts. *Martinez v. Tex. Dep't of Crim. Just.*, 300 F.3d 567, 575 (5th Cir. 2002).

"Even when a State consents to suit in its own courts, however, it may retain [sovereign] immunity from suit in federal court." *Id.* Indeed, nothing in Chapter 554 evidences the State's intent to waive its immunity in both state and federal court, and the Fifth Circuit has held as much. *Id.*; *Perez v. Region 20 Educ. Serv. Center*, 307 F.3d 318, 333 (5th Cir. 2002) ("[T]he Texas Whistleblower Act's waiver of sovereign immunity in Texas *state* court does not amount to a waiver of its sovereign immunity in *federal* court."). Thus, even though Chapter 554 contains a waiver of sovereign immunity, that waiver does not apply in federal court. Because the State has not waived its immunity in federal court, this Court lacks jurisdiction to hear Kendricks's whistleblower claims against the State and the individual defendants in their official capacities.

As to Kendricks's tort claims—intentional infliction of emotional distress, negligent infliction of emotional distress, and defamation—the Court presumes that they fall within the confines of the Texas Torts Claims Act (TTCA), even though Kendricks did not expressly assert a claim under the act. *Gil Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist.*, 786 F.3d 400, 415 (5th Cir. 2015) ("[T]he TTCA also covers all tort theories that may be alleged against a governmental entity whether or not [the entity] waives [sovereign] immunity."); *Mission* 253 S.W.3d 653, 659 (Tex. 2008) ("[A]ll tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the TTCA]' for purposes of section 101.106."). Like the Texas Whistleblower Protection Act, a plaintiff bringing a claim under the TTCA must bring their claim "in the state court in the county in which the cause of action . . . arises." TEX. CIV. PRAC. & REM. CODE § 101.102(a). Thus, like the Whistleblower Protection Act, the TTCA's sovereign immunity waiver applies only in Texas state court. The language in

the TTCA's waiver does not expressly state that it applies to federal court, so it does not apply. *Sherwinski v. Peterson*, 98 F.3d 849, 851–52 (5th Cir. 1996) ("A state does not waive Eleventh Amendment Immunity in federal courts merely by waiving sovereign immunity in its own courts."). The State therefore has not waived its sovereign immunity in federal court, and the Court must dismiss Kendricks's tort claims against the State and the individual defendants in their official capacities.

Further, if a plaintiff sues "both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e). Here, Kendricks sued the State, a governmental entity, and her former co-workers at TDHHS, State employees. Dkt. No. 12. The State moved to dismiss the claims against itself and the employees. Dkt. No. 23. Accordingly, the Court must dismiss all of Kendricks's tort claims against the individual defendants in both their official and individual capacities.

Accordingly, this Court must dismiss the following claims against the State and the individual defendants in their official capacities for lack of subject-matter jurisdiction under the sovereign immunity doctrine:

(1) 42 U.S.C. § 1983 and under general federal question statute;

(2) Fourteenth Amendment to the United States Constitution;

(3) Whistleblower Protection Laws;

(4) Intentional Infliction of Emotional Distress;

(5) Negligent Infliction of Emotional Distress; and

(6) Defamation of Character.

The Court must also dismiss Kendricks's Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, and Defamation of Character claims against the individual defendants for lack of subject-matter jurisdiction under the TTCA. TEX. CIV. PRAC. & REM. CODE § 101.106(e).

**B. Kendricks's remaining claims.**

What remains, then, are all of Kendricks's claims against the individual defendants in their individual capacities except the tort claims under the TTCA, as well as the following claims against the State and the individual defendants in their official capacities: (1) Title VII of the Civil Rights Act of 1964 and amendments; and (2) "All other laws that [her] pleadings meet."

Because the real party in interest to an individual or personal capacity claim is the individual, not the sovereign, "sovereign immunity 'does not erect a barrier against suits to impose individual and personal liability.'" *Lewis v. Clarke*, 581 U.S. 155, 161–63 (2017) (quoting *Hafer*, 502 U.S. at 30–31). Accordingly, the Court has jurisdiction to review Kendricks's individual-capacity claims. Here, Defendants assert that Kendricks fails to state a claim, much less overcome qualified and official immunity. Dkt. No. 23 at 9–26.

The sole arguments Kendricks advances in her response are that the Motion is improper and untimely without explanation. Dkt. No. 25. First, she argues that defendant Marx did not properly respond to her summons and is thus in default. *Id.* at 3. Thus, she asserts that any filings from Marx are improper and she is entitled to a default judgment against Marx. *Id.* As to the remaining defendants, Kendricks argues that their Motion is improper because it is merely a second response to her Original Complaint, their Motion is untimely because they filed it after the time allowed to respond under Federal Rule of Civil Procedure 4, and they have not advanced any law or argument explaining the delay. *Id.* at 3–5.

As to Marx, the purpose of issuing a summons to a defendant under Rule 4 is so that the court may exercise personal jurisdiction over them. *Double Eagle Energy Servs., L.L.C. v. MarkWest Utica EMG, L.L.C.*, 936 F.3d 260, 264 (5th Cir. 2019). Of course, a case cannot proceed unless the plaintiff properly executes service and summons under Rule 4 and the defendant appears. *Ayika v. Sutton*, 378 F. App'x 432, 434 (5th Cir. 2010). If a defendant does not appear when properly summoned, the plaintiff is entitled to make a showing of the defendant's failure and request that the Clerk enter default. FED. R. CIV. P. 55(a). Even if a defendant has actual knowledge of a lawsuit, however, the defendant need not appear unless properly served and summoned under Rule 4. *Ayika*, 378 F. App'x at 434.

Here, Marx appeared before properly being brought into the case. Thus, once Kendricks properly executed Marx's summons, Marx had properly appeared such that the Court can exercise personal jurisdiction over her. Because Marx has appeared and been properly summoned, any entry of default against her would be improper and the Court cannot grant the relief Kendricks seeks in her response.

Kendricks's arguments against the remaining individual defendants also fail. Defendants' Motion is not a second response to her Original Complaint, but a Motion to dismiss her First Amended Complaint. In their Motion, Defendants focus solely on the grounds raised in the First Amended Complaint, even though they could have addressed the claims raised in Kendricks's Original Complaint because she incorporated it by reference. *See* Dkt. Nos. 12, 23.

Additionally, the Motion is not untimely. When a plaintiff files a complaint, the defendant has 21 days from the date the defendant receives service to answer or otherwise respond to the complaint. Fed. R. Civ. P. 12(a)(1)(A). If the plaintiff later files an amended complaint, the defendant has whatever time remains under the original Rule 12(a) deadline or 14 days,

whichever is later, to answer or otherwise respond to the amended complaint. *Id.* 15(a)(3). These deadlines remain in effect "unless the court orders otherwise." *Id.*

Kendricks claims that she filed her Amended Complaint on March 28, 2024. Dkt. No. 25 at 4. She physically filed it that day, but at the time of filing, the Court had not yet ruled on her motion for leave to file an amended complaint. *See* Dkt. Nos. 8, 12, 22. The Court granted Kendricks leave to file an amended complaint on September 10, 2024. Dkt. No. 22. In doing so, the Court ordered that "Defendants shall answer or otherwise respond to the First Amended Complaint on or before September 24, 2024." *Id.* at 1. That order, not Kendricks's physical filing of her First Amended Complaint, triggered the Defendants' time to answer or otherwise respond. Because Defendants filed the live Motion on September 24, 2024, they complied with the Court's order to respond "on or before September 24, 2024." Thus, the Motion is timely.

Because Kendricks's timeliness arguments cannot support denying the Motion, the Court must grant the Motion and dismiss Kendricks's remaining claims. This is because Kendricks does not address the merits of a single one of her claims in her response, regardless of whether sovereign immunity would block them. This includes the individuals' assertion of qualified immunity defenses.

Under Fifth Circuit precedent, a plaintiff's failure to defend a claim beyond the complaint is an abandonment of those claims. *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006). District courts within the Fifth Circuit apply this abandonment rationale in dismissing plaintiffs' claims. *See, e.g., Heisler v. Kean Miller, LLP*, No. 21-724, 2021 WL 3852261, at * 2 (E.D. La. Aug. 27, 2021); *Arkansas v. Wilmington Tr. Nat'l Ass'n*, No. 3:18-CV-1481-L, 2020 WL 1249570, at *1 (N.D. Tex. Mar. 16, 2020); *Trieger v. Ocwen Loan Servicing*, LLC, No. 3:19-CV-00100-L, 2019 WL 3860689 (N.D. Tex. Aug. 15, 2019). Thus, Kendricks abandoned all her

remaining claims when she wholly failed to defend them in response to Defendants' Motion. *Black*, 461 F.3d at 588 n.1 ("[The plaintiff] further failed to defend her . . . claim in both responses to the defendant's motion to dismiss. Her failure to pursue [her] claim beyond her complaint constituted abandonment."); *see also Vela v. City of Hous.*, 276 F.3d 659, 678–79 (5th Cir. 2001) (holding that the defendant waived its limitations defense when it failed to defend it in response to a motion for summary judgment). This is not an instance of a plaintiff failing to file a response to a motion to dismiss but is instead an instance of a plaintiff filing a response but not responding to the arguments raised in the motion to dismiss.

## IV. CONCLUSION

Because the Court lacks jurisdiction to hear several of Kendricks's claims and Kendricks abandoned what claims the Court could hear, the Court **RECOMMENDS** that the District Judge **GRANT** Defendants' Motion and **DISMISS** Kendricks's First Amended Complaint in its entirety.

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battles v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Judge of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted

by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** this 6th day of August, 2026.

DAN N. MACLEMORE
UNITED STATES MAGISTRATE JUDGE